☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with TARGET ACCOUNTS A, B, & C,<br>that are stored at premises controlled by Apple,<br>as further described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 25-840M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Northern     District of     California
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 3/14/2025     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Nancy Joseph     .
                                                                *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 2/28/2025 @ 3:02 p.m.

*Judge's signature*

City and state:     Milwaukee, WI     Hon. Nancy Joseph, U.S. Magistrate Judge
                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information from the iCloud account associated with the following cellular numbers:

    a.  939-324-5219 (**"TARGET ACCOUNT A"**);

    b.  414-712-4799 ("**TARGET ACCOUNT B**"); and

    c.  939-988-4922 ("**TARGET ACCOUNT C**");

that are stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

1

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the accounts from August 1, 2023 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the accounts from August 1, 2023 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the

1

accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

2

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Miguel CARTAGENA-MIRANDA, Jeronis MONTERO, Maleny DEL VALLE-ROSA and others known and unknown, and occurring after August 1, 2023, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The sale and distribution of illegal drugs and the laundering of proceeds of drug sales;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.

3

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with TARGET ACCOUNTS A, B, & C,<br>that are stored at premises controlled by Apple,<br>as further described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-840M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | Distribution of controlled substances and conspiracy to distribute and to possess with intent to distribute controlled substances; Use of communication facility to facilitate drug trafficking, |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
**Tyler Fink** Digitally signed by Tyler Fink Date: 2025.02.26 12:26:07 -06'00'
*Applicant's signature*

Tyler Fink, USPIS Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 2/28/2025 _____

_____
*Judge's signature*

City and state: Milwaukee, WI

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Tyler Fink, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information from the iCloud accounts associated with the following cellular numbers:

 a.   939-324-5219 (**"TARGET ACCOUNT A"**);

 b.   414-712-4799 ("**TARGET ACCOUNT B**"); and

 c.   939-988-4922 ("**TARGET ACCOUNT C**");

that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a full-time law enforcement officer since June 2014.

3.     The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the

1

misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

4.	I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force. The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, and other matters related to the Postal Service. The Milwaukee office's team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity.

5.	I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.

6.	As a part of my duties, I investigate criminal violations relating to narcotics trafficking offenses, including violations of Title 21, United States Code, Sections 841, 843, and 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c). In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, including cellular telephones and other electronic telecommunication devices.

7.	I have had formal training in the investigation of drug trafficking. I have worked with informants in the investigation of drug trafficking. I have participated in the execution of

2

numerous search warrants in which controlled substances, firearms, drug paraphernalia, and monies were seized.

8.      This affidavit is based upon my personal knowledge and upon information provided to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

9.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1), 843(b), and 846 have been committed by Miguel CARTAGENA-MIRANDA ("CARTAGENA-MIRANDA") and others known and unknown. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

### JURISDICTION

11.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

12.     Case agents are currently investigating Miguel CARTAGENA-MIRANDA (DOB: XX/XX/1990) and Maleny DEL VALLE-ROSA (DOB: XX./XX/1992), who are shipping large

3

amounts of cocaine into the Eastern District of Wisconsin from Puerto Rico to Jeronis MONTERO (DOB: XX/XX/1997).

*Arrest of Miguel CARTAGENA-MIRANDA's Customer*

13.      Beginning in 2022, case agents began investigating Ricardo MORENO-CRUZ ("MORENO-CRUZ") (DOB: XX/XX/1985) for receiving large amounts of cocaine laden USPS parcels shipped to him from CARTAGENA-MIRANDA.  On May 22, 2023, MORENO-CRUZ was arrested after a controlled delivery and a search warrant was executed at his residence.  In a post-*Miranda* interview with MORENO-CRUZ, he advised he had multiple cocaine suppliers in Puerto Rico, and one source of supply for him had been CARTAGENA-MIRANDA.  According to MORENO-CRUZ, CARTAGENA-MIRANDA would ship one to two kilograms of cocaine in USPS parcels to MORENO-CRUZ for more than a year.  MORENO-CRUZ would pay CARTAGENA-MIRANDA approximately $20,000 per kilogram.  MORENO-CRUZ provided consent to case agents to search and download the contents of the cell phones in his possession when he was taken into custody.  After a review of the phone's content, case agents located a conversation between MORENO-CRUZ and "Sugar White" through Facebook messenger.  A review of the "Sugar White" Facebook profile showed the profile picture was of CARTAGENA-MIRANDA.  The Facebook messenger conversation between CARTAGENA-MIRANDA and MORENO-CRUZ was from March 2023 to May 2023.  Both subjects appeared to be discussing the price of a kilogram of cocaine ranging from $18,000 to $19,500.

14.      MORENO-CRUZ was later criminally charged for his participation in this drug trafficking organization.  On January 9, 2024, MORENO-CRUZ pled guilty to two counts of possession with intent-cocaine and possession of a firearm by a convicted felon. *See State of Wisconsin v. Richard Moreno*, Milwaukee County Court Case 2023CF002604.

4

15.    On August 8, 2023, case agents were made aware of USPS Priority Mail parcel 9505510690123213567772 ("SUBJECT PARCEL 18"). SUBJECT PARCEL 18 was a USPS large flat rate parcel weighing approximately 7 lbs. 10 oz.  The shipping label for SUBJECT PARCEL 18 indicated it was from "Zuleyka Hernandez Calle 13 BBN8 Sierra Linda Bayamon PR 00957".  SUBJECT PARCEL 18 bore a handwritten label addressed to "Dayana Rivera 1112 W Grant St. Milwaukee W.I. 53215".  SUBJECT PARCEL 18 was postmarked on August 1, 2023, in Bayamon, Puerto Rico 00957, at approximately 12:23 p.m.  The postage paid was $22.80. SUBJECT PARCEL 18 was delivered on August 4, 2023 at approximately 9:52 a.m.

16.    I review Postal Service records and labels of parcels delivered to the state of Wisconsin from source narcotics areas or sent to those source narcotics areas from Wisconsin. I do this because I know, based on training and experience, drug traffickers will sometimes use USPS Priority Mail service, which is the intended USPS two-day delivery product.  Based on my training and experience with the USPIS, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names, phone numbers, and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

17.    I know, based on my training and experience, Puerto Rico is a trans-shipment point for controlled substances.  As such, controlled substances are frequently transported from Puerto Rico via USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via USPS and/or other means.

18.     The sender's address was similar to a prior suspicious parcel shipped from Bayamon, Puerto Rico, to a different address in Milwaukee, Wisconsin, where MORENO-CRUZ was observed obtaining a USPS parcel from.  The Consolidated Lead Evaluation and Reporting ("CLEAR") database is a public records product which is designed for law enforcement officers in locating subjects and witnesses, verifying identities of individuals, and gathering background information for use in investigations.  A search of the CLEAR database indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 18 was fictitious.  The sender's name could not be verified.

19.     On August 17, 2023, case agents received a copy of the Post Office surveillance video, which depicted Maleny DEL VALLE-ROSA ("DEL VALLE-ROSA") shipping SUBJECT PARCEL 18.  DEL VALLE-ROSA is a known associate of CARTAGENA-MIRANDA.  On November 2, 2018, DEL VALLE-ROSA and CARTAGENA-MIRANDA were occupants of the same vehicle while driving in Milwaukee when they had a car crash, which was documented by the Milwaukee Police Department.

20.     On August 21, 2023, case agents were made aware of USPS Priority Mail parcel 9505512222073229823386 ("SUBJECT PARCEL 19"). SUBJECT PARCEL 19 was a USPS large flat rate parcel weighing approximately 6 lbs. 8 oz.  The shipping label for SUBJECT PARCEL 19 indicated it was from "Ernesto Hernandez Urb. Reparto Santa Teresita M15 Calle 25 Bayamon PR 00956".  SUBJECT PARCEL 19 bore a handwritten label addressed to "Kendra Vazquez 3869 E Barnard Ave. Cudahy WI 53110 Rear".  SUBJECT PARCEL 19 was postmarked on August 17, 2023, in Bayamon, Puerto Rico 00959, at approximately 11:30 a.m.  The postage paid was $22.80.

6

21.     A search of the CLEAR database indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 19 was fictitious.  The sender's name could not be verified.

22.     On September 6, 2023, case agents received a copy of the Post Office surveillance video, which depicted CARTAGENA-MIRANDA shipping SUBJECT PARCEL 19.

23.     On September 14, 2023, case agents were made aware of USPS Priority Mail parcel 9505510336363256709370 ("SUBJECT PARCEL 20"). SUBJECT PARCEL 20 was a USPS large flat rate parcel weighing approximately 7 lbs. 11 oz.  The shipping label for SUBJECT PARCEL 20 indicated it was from "Alex Figueroa Urb. Reparto Santa Teresita M15 Calle 25 Bayamon Pr 00956".  SUBJECT PARCEL 20 bore a handwritten label addressed to "Yessica Rodriguez 2166 S. 7th St. Milwaukee WI 53215".  SUBJECT PARCEL 20 was postmarked on September 13, 2023, in Sabana Seca, Puerto Rico 00952 at approximately 12:02 PM.  The postage paid was $22.80.

24.     On September 14, 2023, case agents were made aware of USPS Priority Mail parcel 9505510690123256610282 ("SUBJECT PARCEL 21"). SUBJECT PARCEL 21 was a USPS large flat rate parcel weighing approximately 7 lbs. 10 oz.  The shipping label for SUBJECT PARCEL 21 indicated it was from "Jomael Santana Urb. Mira Flores Calle 15 Bloq 4-44 Bayamon PR 00957".  SUBJECT PARCEL 21 bore a handwritten label addressed to "Nashaly Matras 1112 W. Grant St. Milwaukee WI 53215".  SUBJECT PARCEL 21 was postmarked on September 13, 2023, in Bayamon, Puerto Rico 00957, at approximately 12:36 p.m.  The postage paid was $22.80. SUBJECT PARCEL 21 was delivered on September 16, 2023 at approximately 5:22 p.m.

25.     A search of the CLEAR database indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 20 and SUBJECT PARCEL 21 were fictitious.  The sender's names could not be verified.  Using an internet search engine, it showed the Bayamon

7

Gardens Post Office, located at 100 Victory Shopping Center Suite 1, Bayamon, Puerto Rico 00957, which is the postmark location for SUBJECT PARCEL 21, is approximately a 19-minute drive from the Sabana Seca Post Office, located at 100 Carr 866, Sabana Seca, Puerto Rico 00952, which is the postmark location for SUBJECT PARCEL 20. SUBJECT PARCEL 20 was postmarked approximately 34 minutes before SUBJECT PARCEL 21. From case agent's training and experience, they believe the subject(s) shipping SUBJECT PARCEL 20 and SUBJECT PARCEL 21 intentionally visited two different nearby post offices to conceal their participation in the shipping of parcels and the contents of the parcels.

26. On October 2, 2023, case agents received a copy of the Post Office surveillance video, which depicted CARTAGENA-MIRANDA shipping both SUBJECT PARCEL 20 and SUBJECT PARCEL 21.

27. On September 21, 2023, case agents were made aware of USPS Priority Mail parcel 9505510336373263233430 ("SUBJECT PARCEL 22"). SUBJECT PARCEL 22 was a USPS large flat rate parcel weighing approximately 8 lbs. 11 oz. The shipping label for SUBJECT PARCEL 22 indicated it was from "Carla Jimenez Lopez Urb. Reparto Santa Teresita M 15 Calle 25 Bayamon PR 00956". SUBJECT PARCEL 22 bore a handwritten label addressed to "Angel Threatt Gonzalez 2441 N Dr William Finlayson St Milwaukee WI 53212". SUBJECT PARCEL 22 was postmarked on September 20, 2023, in Sabana Seca, Puerto Rico 00952 at approximately 10:28 AM. The postage paid was $22.80.

28. On September 26, 2023, case agents applied for a federal search warrant for SUBJECT PARCEL 22. On September 27, 2023, the search warrant was issued by United States Magistrate Judge Stephen Dries in the Eastern District of Wisconsin. Upon executing the search warrant on SUBJECT PARCEL 22, case agents discovered one vacuum sealed bag of a white

8

powdery substance, suspected to be cocaine, wrapped in multiple layers of vacuum sealed bags, plastic wrap, and carbon paper. Three additional smaller plastic bags containing unknown powders were located within these wrappings. The brick of suspected cocaine had a gross weight of approximately 1,028 grams. The suspected cocaine field tested positive for cocaine HCl. The unknown powders were also tested, but they came back as inconclusive.

29. The drug packaging, suspected cocaine, and the additional three unknown powders were later sent to the USPIS Forensic Laboratory for analysis. Certified laboratory testing revealed the presence of the following controlled substances:

    a. Approximately 1,010.8 grams of cocaine hydrochloride and caffeine;

    b. Approximately 0.4562 grams of heroin, fluorofentanyl, fentanyl, and procaine;

    c. Approximately 0.9856 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine; and

    d. Approximately 1.2323 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine.

30. A latent print examination of SUBJECT PARCEL 22 and its contents found CARTAGENA-MIRANDA's prints were located on multiple locations including the items within the parcel, the adhesive side of clear tape, and pieces of green plastic wrap.

31. A review of the USPS business records indicated an unknown person(s) was using a specific and unique method to track SUBJECT PARCEL 22. A subpoena return from AT&T indicated the Internet Protocols ("IP") used to track the parcel was subscribed to Julio VARGAS ("VARGAS"), 3908 N. 19th Place, Unit 1 Unit 1, Milwaukee, Wisconsin 53206, (262)900-5023. VARGAS was on probation for a previous felony drug case through the state of Wisconsin. On October 19, 2023, case agents were notified by the Milwaukee Police Department that VARGAS

9

was murdered on this date. Phone records for VARGAS's phone number provided by AT&T above showed his phone had multiple phone contacts with 939-324-5219 ("**TARGET ACCOUNT A**"). The subscriber information for the **TARGET ACCOUNT A** phone was listed as CARTAGENA-MIRANDA. All of the phone contacts were made on August 24, 2023.

32. On October 2, 2023, case agents received a copy of the Post Office surveillance video, which depicted DEL VALLE-ROSA shipping SUBJECT PARCEL 22.

33. On December 7, 2023, case agents were made aware of USPS Priority Mail parcel 9505510690123339685770 ("SUBJECT PARCEL 24"). SUBJECT PARCEL 24 was a USPS large flat rate parcel weighing approximately 6 lbs. 6 oz. The shipping label for SUBJECT PARCEL 24 indicated it was from "Karla Jimenez Urb. San Fernando Calle 4 A5, Bayamon PR 00957". SUBJECT PARCEL 24 bore a handwritten label addressed to "Angelys Lopez Dias 2409 S 16 St Milwaukee WI 53215". SUBJECT PARCEL 24 was postmarked on December 5, 2023, in Bayamon, Puerto Rico 00957, at approximately 10:48 a.m. The postage paid was $22.80. SUBJECT PARCEL 24 was delivered on December 7, 2023, at approximately 1:16 p.m.

34. A search of the CLEAR database indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 24 was fictitious. The sender's name could not be verified.

35. On December 28, 2023, case agents received a copy of the Post Office surveillance video, which depicted DEL VALLE-ROSA shipping SUBJECT PARCEL 24.

36. On December 18, 2023, case agents were made aware of USPS Priority Mail parcel 9505512222103348877592 ("SUBJECT PARCEL 25"). SUBJECT PARCEL 25 was a USPS large flat rate parcel weighing approximately 6 lbs. 9 oz. The shipping label for SUBJECT PARCEL 25 indicated it was from "Milton Nieves Urb. San Fernando A5 Calle 4 Bayamon Pr 00957". SUBJECT PARCEL 25 bore a handwritten label addressed to "Ingris Nieves 2409 S. 16

10

St Milwaukee WI 53215".  SUBJECT PARCEL 25 was postmarked on December 14, 2023, in Bayamon, Puerto Rico 00959, at approximately 11:28 a.m.  The postage paid was $22.80. SUBJECT PARCEL 25 was delivered on December 16, 2023 at approximately 4:16 p.m.

37. A search of the CLEAR database indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 25 was fictitious.  The sender's name could not be verified.

38. On December 28, 2023, case agents received a copy of the Post Office surveillance video, which depicted CARTAGENA-MIRANDA shipping SUBJECT PARCEL 25.

39. On February 16, 2024, case agents were made aware of USPS Priority Mail parcel 9505510690124045768061 ("SUBJECT PARCEL 26"). SUBJECT PARCEL 26 was a USPS large flat rate parcel weighing approximately 6 lbs. 12 oz.  The shipping label for SUBJECT PARCEL 26 indicated it was from "Karla Lopez Urb. Reparto Santa Terresita M15 C 125 Bayamon P.R 00956".  SUBJECT PARCEL 26 bore a handwritten label addressed to "Angel Lopez Torrez 3869 E Barnard Ave Rear Cudahy WI 53110-1523".  SUBJECT PARCEL 26 was postmarked on February 14, 2024, in Bayamon, Puerto Rico 00957, at approximately 12:15 p.m. The postage paid was $24.75.  SUBJECT PARCEL 26 was delivered on February 17, 2024 at approximately 11:05 a.m.

40. A search of the CLEAR database indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 26 was fictitious.  The sender's name could not be verified.

41. On March 19, 2024, case agents received a copy of the Post Office surveillance video, which depicted DEL VALLE-ROSA shipping SUBJECT PARCEL 26.

42. In January and February 2025, case agents were made aware of the following suspicious parcels:

11

a. USPS Priority Mail parcel 9505510336375021530034 ("SUBJECT PARCEL 27"). SUBJECT PARCEL 27 was a USPS large flat rate parcel weighing approximately 8 lbs. 10 oz. The shipping label for SUBJECT PARCEL 27 indicated it was from "Javier Pagan Ext La Imaculada DD 7 Calle 4 Toa Baja P.R. 00949". SUBJECT PARCEL 27 bore a handwritten label addressed to "Enrique Vazquez 4906 N. 37th St. Milwaukee W.I. 53209". SUBJECT PARCEL 27 was postmarked on January 21, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 2:57 p.m. The postage paid was $26.30. SUBJECT PARCEL 27 was delivered on January 24, 2025 at approximately 3:11 p.m.

b. USPS Priority Mail parcel 9505510336375022531115 ("SUBJECT PARCEL 28"). SUBJECT PARCEL 28 was a USPS large flat rate parcel weighing approximately 8 lbs. 10 oz. The shipping label for SUBJECT PARCEL 28 indicated it was from "Bryan Rojas Oliveras Ext. La Imaculada DD 9 Calle 4 Toa Baja P.R. 00949". SUBJECT PARCEL 28 bore a handwritten label addressed to "Anthony Perez 1545 W. Washington Milwaukee W.I. 53204". SUBJECT PARCEL 28 was postmarked on January 22, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 1:16 p.m. The postage paid was $26.30. SUBJECT PARCEL 28 was delivered on January 25, 2025 at approximately 10:25 a.m.

c. USPS Priority Mail parcel 9505510690125027094604 ("SUBJECT PARCEL 29"). SUBJECT PARCEL 29 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 29 indicated it was from "Josue Rivera Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 29 bore a handwritten label addressed to "Carlos Garcia 1032

12

W Rogers St. Milwaukee WI 53204". SUBJECT PARCEL 29 was postmarked on January 27, 2025, in Bayamon, Puerto Rico 00957, at approximately 11:52 a.m. The postage paid was $26.30.

d. USPS Priority Mail parcel 9505510336375034537808 ("SUBJECT PARCEL 30"). SUBJECT PARCEL 30 was a USPS large flat rate parcel weighing approximately 7 lbs. 1 oz. The shipping label for SUBJECT PARCEL 30 indicated it was from "Javier Pagan Calle Perla del Sur I 28 Reparto Flamingo Bayamon P.R. 00959". SUBJECT PARCEL 30 bore a handwritten label addressed to "Oscar Vargas 2475 S. 5th St. Milwaukee W.I. 53207". SUBJECT PARCEL 30 was postmarked on February 3, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 11:41 a.m. The postage paid was $26.30.

e. USPS Priority Mail parcel 9505510336375041542512 ("SUBJECT PARCEL 31"). SUBJECT PARCEL 31 was a USPS large flat rate parcel weighing approximately 8 lbs. 5 oz. The shipping label for SUBJECT PARCEL 31 indicated it was from "Jose Delgado Ext LA Inmaculada DD9 Calle Santa Fe Toa Baja, PR 00949-3992". SUBJECT PARCEL 31 bore a handwritten label addressed to "Anthony Beyreis 2457A W McKinley ave Milwaukee, WI 53205". SUBJECT PARCEL 31 was postmarked on February 10, 2025, in Sabana Seca, Puerto Rico 00952, at approximately 12:22 p.m. The postage paid was $26.30. SUBJECT PARCEL 31 was delivered on February 12, 2025 at approximately 11:40 p.m.

f. USPS Priority Mail parcel 9505510690115041664938 ("SUBJECT PARCEL 32"). SUBJECT PARCEL 32 was a USPS large flat rate parcel weighing approximately 8 lbs. 2 oz. The shipping label for SUBJECT PARCEL 32 indicated it was from

13

"David Rivera Calle Perla del Sur i28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 32 bore a handwritten label addressed to "Gabriel Hernandez 5125 n 32nd st Milwaukee WI 53209". SUBJECT PARCEL 32 was postmarked on February 10, 2025, in Bayamon, Puerto Rico 00957, at approximately 1:01 p.m. The postage paid was $26.30.

g. USPS Priority Mail parcel 9505512222085043969720 ("SUBJECT PARCEL 33"). SUBJECT PARCEL 33 was a USPS large flat rate parcel weighing approximately 8 lbs. 2 oz. The shipping label for SUBJECT PARCEL 33 indicated it was from "Hector Figueroa Calle 25 Urb Royal Town V12 Bayamon RR 00956". SUBJECT PARCEL 33 bore a handwritten label addressed to "Reylando Garcia 6029 W. Lapham St Milwaukee WI 53214". SUBJECT PARCEL 33 was postmarked on February 12, 2025, in Bayamon, Puerto Rico 00959 at approximately 9:18 a.m. The postage paid was $26.30.

43. A search of the CLEAR database indicated the recipients' names shown on the shipping labels for SUBJECT PARCEL 27 through SUBJECT PARCEL 33 were fictitious. The senders' names could not be verified.

44. On February 5, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 30. After the USPS Letter Carrier delivered the parcel, Jeronis MONTERO ("MONTERO"), exited the residence. MONTERO went to a nearby gas station, came back to the residence, and later left again with another male subject carrying a backpack. From previous investigations into MONTERO, case agents know MONTERO to be VARGAS's brother.

14

45.     On February 13, 2025, I conducted surveillance at the destination address of SUBJECT PARCEL 32. At approximately 2:07 p.m., MONTERO was seen exiting the front door of the residence, leaving in a vehicle, and shortly returning to the residence.

46.     On February 13, 2025, I traveled to the North Milwaukee Post Office, located at 5995 N. Teutonia Avenue, Milwaukee, Wisconsin 53209, and located SUBJECT PARCEL 32. On this same date, I applied for a federal search warrant for SUBJECT PARCEL 32. On February 18, 2025, I received the search warrant which was issued by U.S. Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin. Upon executing the search warrant, case agents discovered one sealed bag of a white powdery substance, suspected to be cocaine, wrapped in multiple layers of vacuum sealed bags, carbon paper, plastic wrap, and tape. The suspected cocaine had a gross weight of approximately 1,030 grams and field tested positive for the presence of cocaine.

47.     On February 18, 2025, case agents received a copy of the Post Office surveillance video, which depicted CARTAGENA-MIRANDA shipping SUBJECT PARCEL 28, SUBJECT PARCEL 29, and SUBJECT PARCEL 30. An unknown Hispanic male shipped SUBJECT PARCEL 27. As of this application for search warrant, case agents have not yet received copies of the surveillance video for SUBJECT PARCELS 31 through 34.

*Identification of TARGET ACCOUNTs*

48.     Case agents conducted a check of Milwaukee Police Department records for Jeronis M. MONTERO. Case agents located a Milwaukee Police Case# 2410030033, detailing an incident wherein Lisandra RIVERA stated an unknown female attacked her at 2808 North Pierce Street. MONTERO was also interviewed by police and provided his phone number to officers as 414-712-4799 (**"TARGET ACCOUNT B"**).

15

49. Case agents conducted a check of Cash App for 414-712-4799 (**"TARGET ACCOUNT B"**) and found an account for that phone number. The account name was, "Nonie" and had a "$cashtag" name of "$bignon414." Through prior investigations, case agents know that MONTERO has a nickname of "Nonie."

50. Case agents conducted a search of the Wisconsin Department of Corrections jail call system for 414-712-4799 (**"TARGET ACCOUNT B"**). Case agents located a call (CSN#) between MONTERO and an inmate using an account under the name Deontae HOWARD on January 24, 2025, at approximately 9:27 p.m. Below is a transcript of the pertinent portion of the phone call:

MONTERO – Yeah, hello?

HOWARD – What's happening bro?

MONTERO – Hey, guess who called me a little while ago. Literally a little while ago.

HOWARD – Who?

MONTERO – (Speaks in Spanish)

HOWARD – Who? [Unintelligible]

MONTERO – Grab this number.

HOWARD – He tell you to give it to me?

MONTERO – Yup.

HOWARD – What is it?

MONTERO – It's crazy, cause I was like n****. You just called me day n****, I just got off the phone with this n**** a little while ago, woo woo woo. He said "damn, what he talkin about what he say bro?" I said, shit he asked about you n****. I told him I hadn't

16

talk to you in a little while. He was like, "bro give him my number my n****. Next time you talk to him give him my number".

HOWARD – What is it?

MONTERO – 939

HOWARD – 939

MONTERO – 324

HOWARD – 234

MONTERO – No, 324

HOWARD – Oh, 324?

MONTERO – Yup. 5219

(Phone number – 939-324-5219)

51. Through prior investigation, case agents know this phone number, 939-324-5219 (**"TARGET ACCOUNT A"**), to belong to CARTAGENA-MIRANDA. Case agents then conducted a check of 939-324-5219 (**"TARGET ACCOUNT A"**). Case agents found a call made to 939-324-5219 (**"TARGET ACCOUNT A"**) on January 24, 2025, at 10:06 p.m. This call was made by Angel GARCIA-ESPADA. Based on the prior phone call detailed with MONTERO and this phone call made to CARTAGENA-MIRANDA, case agents believe MONTERO was actually talking to GARCIA-ESPADA and not Deontae HOWARD. GARCIA-ESPADA is currently serving a sentence regarding Milwaukee County cases 2017CF005823 (Second degree recklessly endangering safety and fleeing and eluding an officer) and 2018CF002428 (Possession with the intent to deliver narcotics).

52. In February 2025, case agents issued a subpoena, served on T-Mobile, for telephone number 939-324-5219 (**"TARGET ACCOUNT A"**). The subscriber information for the

17

telephone number listed to Miguel CARTAGENA-MIRANDA with a billing address of 48 Salida Coamo Carr 155 KM 27.4, Orocovis, Puerto Rico 00720.

53. Phone toll analysis for the time period of January 17, 2025, to February 12, 2025, indicated CARTAGENA-MIRANDA's telephone number, 939-324-5219 ("**TARGET ACCOUNT A**"), was in frequent contact with telephone number 414-712-4799 ("**TARGET ACCOUNT B**"). In February 2025, case agents issued a subpoena, served on AT&T, for telephone number 414-712-4799 ("**TARGET ACCOUNT B**"). The subscriber information for the telephone number listed to Julio VARGAS, MONTERO's deceased brother, with a billing address of 3908 N. 19th Place Unit 1, Milwaukee, Wisconsin 53206.

54. An additional review of the Wisconsin Department of Corrections records showed 414-712-4799 ("**TARGET ACCOUNT B**") was associated with MONTERO who is currently on probation. MONTERO was sentenced to probation for Carrying a Concealed Weapon under Milwaukee County court case number 2023CM002960.

55. Additional phone toll analysis for the time period of January 18, 2025, to February 16, 2025, indicated CARTAGENA-MIRANDA's telephone number, **TARGET ACCOUNT A,** was in frequent contact with telephone number 939-988-4922 ("**TARGET ACCOUNT C**"). In February 2025, case agents issued a subpoena, served on T-Mobile, for telephone number 939-988-4922 ("**TARGET ACCOUNT C**"). The subscriber information for the telephone number listed to Maleny DEL VALLE-ROSA with a billing address of Edif 8 Apt 145 Res Sierra Linda, Bayamon, Puerto Rico 00957.

56. A search of the CLEAR database, along with other law enforcement databases, indicated the phone number for **TARGET ACCOUNT C** was associated with DEL VALLE-ROSA.

18

57.     On February 19, 2025, case agents began to draft separate messages using an Apple product to the phone number 939-324-5219 ("**TARGET ACCOUNT A**"), 414-712-4799 ("**TARGET ACCOUNT B**"), and 939-988-4922 ("**TARGET ACCOUNT C**"). When doing so, each of the individual numbers in the draft turned blue. Case agents know this is significant because when two Apple brand products are communicating, the messages appear blue, but when an Apple brand product is communicating with a non-Apple brand product, the messages are green. Therefore, case agents believe that **TARGET ACCOUNTS A**, **B**, and **C** are all being used through an Apple product.

## <u>BACKGROUND CONCERNING APPLE</u>[1]

58.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

59.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

    a.  Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

    b.  iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

19

("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.  iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.  Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.  Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users.  It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f.  Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.  App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

60.  Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account

20

identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

61. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

62. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs"

21

for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

63. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

64. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS")

22

messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

65. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

66. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

67. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because

23

every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

68.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

69.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

70.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

71.     Based on the forgoing, I request that the Court issue the proposed search warrant.

72.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by

serving the warrant on Apple.  Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

25

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information from the iCloud account associated with the following cellular numbers:

    a.  939-324-5219 (**"TARGET ACCOUNT A"**);

    b.  414-712-4799 ("**TARGET ACCOUNT B**"); and

    c.  939-988-4922 ("**TARGET ACCOUNT C**");

that are stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

2

# ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with the accounts from August 1, 2023 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

1

d. The contents of all instant messages associated with the accounts from August 1, 2023 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

2

**II. Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Miguel CARTAGENA-MIRANDA, Jeronis MONTERO, Maleny DEL VALLE-ROSA and others known and unknown, and occurring after August 1, 2023, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The sale and distribution of illegal drugs and the laundering of proceeds of drug sales;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.

3